## THE SHAMROCK II.

No. 13523.

District Court, W. D. Washington, N. D.
April 29, 1936.

Winter S. Martin, Kenneth Durham, and Harry S. Redpath, all of Seattle, Wash., for libelants.

Baldrey & Kenyon, of Bellingham, Wash., for respondents.

Hayden, Merritt, Summers & Bucey, of Seattle, Wash., for claimant.

NETERER, District Judge.

The libelants seek to impress a lien for overtime wages against the vessel Diesel Tug Shamrock II, owned by the Bellingham Tug & Barge Company, a private corporation of the state of Washington, chartered by its owner to the Port Commission of Bellingham under bare boat charter for operation in the harbor in Bellingham Bay. On petition of the respondent Bellingham Tug & Barge Company, the Port of Bellingham was brought in as a party on Admiralty Rule 56 (28 U.S.C.A. following section 723). The cause was duly tried upon the issues made by the second amended libel and the answers of the Bellingham Tug & Barge Company, claimant, and the Port of Bellingham, and the court after duly considering the evidence, and arguments of the proctors for respective parties, now makes the following findings of facts:

First. That the libelants herein were employed pursuant to the provisions of an Act of Congress approved June 16, 1933 (48 Stat. 195), entitled, "An Act To encourage national industrial recovery, to foster fair competition, and to provide for the construction certain public works, and for other purposes," known as the "National Recovery Act," for the purpose of providing employment for the unemployed for the common good. Pursuant to the provisions of the NIRA a "breakwater" was constructed in the harbor of Bellingham Bay for the Port of Bellingham. The United States through the NIRA to

employ and pay for all labor of said construction at a wage which was promulgated by the said NIRA, the Port of Bellingham to provide the material used in the said construction, and the necessary facilities in the performance of said work, that in harmony with such plan the Port of Bellingham obtained a charter for the Shamrock II from the claimant, Bellingham Tug & Barge Company, for use in towing rock from the quarries on Lummi Island to the Port of Bellingham; that a Mr. McElman was the representative of the CWA for Whatcom county and directed the employment of the libelants; that Mr. Hopkins was manager of the Port of Bellingham to supervise the construction of said breakwater. He had no authority in the operation of the tug, and gave no orders with respect to the men on said work; that Mr. Croy was the foreman for the CWA with general direction of the work. In connection with the said work, he received part compensation from the Port of Bellingham, supervising on behalf of the Port of Bellingham the furnishing of material and equipment. All material and equipment for said construction to be furnished by the Port of Bellingham, but he had no authority with relation to the work of the libelants or said tug.

Second. That after said boat was chartered to the Port of Bellingham, additional bunks were constructed on said tug for the purpose of providing living quarters for a double crew on the tug. The wages being fixed by the CWA and the time of employment being limited, and to the end that more men might be employed, a double crew was placed on the said tug.

Third. The crew instead of dividing itself into watches, all worked as serving on one watch, and claiming overtime for the entire crew in excess for the time the vessel operated. The purpose for providing the double crew was to give employment to more men, but not to have a double crew perform services that the single crew was to perform.

Fourth. Libelants knew that they were not employed by or in the interests of the tug, but that they were employed by the United States Relief Agency pursuant to the act, supra, for the purpose of relieving the unemployment, and knew that the sole employer was the United States through its agency for the purpose of furnishing employment to the unemployed and knew they would be compensated by the United States agency and none other.

Fifth. That while the basis for compensation was in terms of hours of the week, and compensation for various classes of work, the compensation was, in fact, to provide a weekly compensation: Operators' wages were fixed at $36 a week, equal to 30 hours at $1.20 per hour; assistant operators, $27 per week, 30 hours at 90 cents per hour; deck hands, $22.50 per week, 30 hours at 75 cents per hour. This wage was fixed at the inception of the employment. In January, 1934, the basis of compensation was reduced to a total of 24 hours a week, and the weekly compensation was relatively lessened. The men worked only 3 days each week. The prevailing rate of compensation of private tug operators for services of operator, assistant operators, and deck hand was $135, $75, and $60 per month respectively for every day in the month, hours unlimited depending whether the tug was engaged about the harbor or on long trips. No overtime was paid for longer hours. This included meals when the tug was away from the dock. Under the employment in issue, the members of the crew paid to the tug $1 a day for meals, etc., actually served on the vessel. The work done in this case was harbor work.

Sixth. The claims of the libelants for the hours of "overtime" and their hourly compensation paid, the compensation claimed would appear to be as follows:

| Libelant | Total Claimed | Number of days | Rate per day. |
|---|---|---|---|
| 1. Lee J. Allison (Master) | $1,192.64 | 73 | $16.33 |
| 2. George Paul (Assistant Operator) | 771.90 | 46 | 16.79 |
| 3. Lee B. Ginnett (Assistant Operator) | 248.60 | 20 | 12.34 |
| 4. Waldemar Iverson (Engineer) | 227.53 | 19 | 11.97 |
| 5. H. L. Selhaver (Seaman) | 804.30 | 74 | 10.86 |
| 6. Nick Constanti (Deckhand) | 577.95 | 55 | 10.50 |
| 7. Jack Radisich (Seaman) | 489.89 | 47 | 10.42 |
| 8. John C. Hansen (Seaman) | 171.75 | 19 | 9.04 |

fixing the average daily compensation of $16.33 for an operator and $9.04 for a deck hand. The seamen did inquire of the disbursing clerk of the CWA who would pay for the overtime and he told them the Port of Bellingham would have to pay for overtime and posted a notice to that effect in the tug, but as soon as such act was dis-

closed to the officers of the Port of Bellingham, the notice was by such officers torn down, and the fact was immediately known to the seamen, and such seamen were advised that the CWA could not pay for any overtime, and also that the Port of Bellingham would not pay for any overtime. The court also finds that the tug was in continuous operation, but did lie at dock for more than an hour at a time, and overtime is charged for such idle hours.

Seventh. The libelants were paid and acknowledged the receipt in the following form on the pay roll: "We, the subscribers, severally acknowledged and received money from the disbursing officer in cash the sums set opposite our respective names in full payment for our services for the period of this pay roll, and we hereby certify that said sums are correct."

As conclusions of law, the court finds that the libelants have no liens on the tug; they were not employed in its behalf, or in the interests of her owner, the employment was solely by the United States Relief Agency, all of which was known by the employees and such employment accepted and continued. Libelants have no enforceable claim against the tug or the port of Bellingham.

Decree of dismissal may on notice be presented.